**CITY OF SPRING VALLEY, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 532.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 3, 1971.

Rehearing Denied Dec. 1, 1971.

C. B. Stephenson, Schlanger, Cook & Cohn, Houston, for appellant.

Joseph R. Riley, Houston, for appellee.

SAM D. JOHNSON, Justice.

The City of Spring Valley brought suit in the District Court of Harris County to enjoin construction of a parking lot by Southwestern Bell Telephone Company. Injunction was denied by the trial court. From the order denying a temporary injunction the City of Spring Valley perfects this appeal.

The site of the proposed parking lot is directly adjacent to the telephone company's central office building. Both the building and the proposed parking lot are completely within the city limits of the City of Spring Valley. The telephone company's present central office building is located within a commercial zone or district of the city however, and the proposed parking lot is located within a zone or area which is restricted by city ordinance to residential use only. The telephone company sought without success to secure a zoning variance from the city to allow construction of the proposed parking lot in the residential area. After being refused the zoning variance on two separate occasions the telephone company proceeded with the installation of the parking lot and the instant suit was instituted by the city to halt the construction.

The trial court denied the city's application for injunction and thereafter, at the city's request, made findings of fact and conclusions of law. The essence of such findings was that the telephone company, by virtue of Article 1011i, Tex.Rev.Civ. Stat.Ann. could not be prohibited from providing the facility. We concur in that determination.

Basically, the article referred to gives zoning powers to cities. The particular section referred to then provides as follows:

"The provisions of this Act or of any ordinance of any city or town, enacted under the authority of this Act, shall not apply to the location, construction, maintenance or use of central office buildings of corporations, firms or individuals engaged in the furnishing of telephone service to the public, or to the location, construction, maintenance or use of any equipment in connection with such buildings or a part of such telephone system, necessary in the furnishing of telephone service to the public."

It is conceded by the telephone company that the city's zoning ordinance is valid and that it has no right to construct the parking lot in a residential area unless such use is permitted by the cited article. Other than in one instance which is of no assistance to the present situation Article 1011i, Tex.Rev. Civ.Stat.Ann. has not been construed. See:

Marshall v. City of West University Place, 351 S.W.2d 257 (Tex.Civ.App.—Waco 1961, writ ref'd n. r. e.).

The defendant telephone company is engaged in supplying telephone service to the public and the existing central office building is essential for this purpose. The city does not dispute that Article 1011i would give the telephone company authority to erect a central office building or make an extension of the present central office building in its residentially zoned areas. The city strongly contends however, that "A parking lot is not equipment used in connection with a central office building which is necessary in order to furnish telephone service to the public."

The record reflects a pattern of volatile growth in the number of main telephones since the opening of the existing central office building. From less than 1000 customers in 1946 it had grown to over 32,000 in 1970. The projected increase between 1970 and 1980 was at the rate of 2,300 per year and for the decade following at an even more accelerated rate. If the projected growth occurs a new or greatly expanded central office building will have to be constructed on or before 1977. The present size of the central office building and the tract upon which it is located is a product of the rapid telephone growth in the area with segmented land acquisitions dating back to 1946. A total of four parcels of land and seven building additions make up the present building and land configuration. With the consumption of land by the successive expansions of the central office building the parking facilities at some time previously available on the property have been eliminated.

Telephone company vehicles are used in connection with the operation of the central office building. In addition there are almost one hundred telephone company employees working in the building, and from twenty-six to one hundred Western Electric employees working there. These employees use their personal automobiles in driving to and from their work.

On cross-examination the Police Chief of the city testified that one side of the street in front of the telephone building (Bade Street) has been made into a "no parking" area by city ordinance. Before the passage of the "no parking" ordinance telephone employees parked on both sides of the street. The chief recalled instances in which school buses and fire engines were unable to pass along the street because of the telephone company cars which were parked on both sides of the streets. It was these incidents which led to the "no parking" ordinance.

We believe the record reflects the necessity for the telephone company to provide parking facilities for the maintenance and use of the existing and proposed extension of the central office building. It was demonstrated that the building could not be operated without employees, that employees found it necessary to drive their cars to work and that the parking situation had been a source of aggravation and finally the reason for governmental action which had further amplified the problem.

The record fully establishes that the telephone company, as an incident to supplying telephone service, is constructing the parking lot in connection with the existing and adjacent central office building. The necessity of constructing parking facilities in the overall effort to supply the telephone service to the public was, we believe, amply borne out by the testimony of the witness who testified in the trial court.

That space for parking may be necessary for the use of a building has been recognized. City of Dallas v. Malloy, 214 S.W.2d 154 (Tex.Civ.App.—El Paso 1948, writ dism'd). Under the circumstances shown we are of the opinion that the trial court was well within its discretion in concluding that parking facilities were necessary to the "maintenance and use" of the central office building.

The judgment of the trial court is affirmed.